UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DW PROPERTIES,

                *Plaintiff*,

-against-

LIVE ART INC.,

                *Defendant*.

No. 23-cv-7004 (JPO)


# MEMORANDUM OF LAW
# OF DEFENDANT IN SUPPORT OF MOTION TO DISMISS


Dated: New York, New York
      2023-August-16

**ARTxLAW PLLC**

John R. Cahill
Ronald W. Adelman
8 North Front Street
Kingston, NY 12401
212-719-4400
john@artxlaw.com
ron@artxlaw.com

*Attorneys for Defendant
Live Art Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF FACTS ................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 3

ARGUMENT ......................................................................................................................... 4

    I.  Live Art Complied With All Warranties Under the Sale Contract ......................... 5

    II. The Breach of Warranty Claim Is Duplicative of the Breach of Contract Claim ... 7

    III. There is No Viable Independent Claim for an Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing ..................................................................... 8

    IV. The Negligent Misrepresentation Claim Must Be Dismissed Because Plaintiff Fails to Allege a Valid Basis for the Existence of a Special Relationship Between the Parties ................................................................................................................................ 9

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ari & Co. v. Regent Int'l Co.*, 273 F. Supp. 2d 518 (S.D.N.Y. 2003) .......................... 9

*Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK). 2011 WL 5910192, *5 (S.D.N.Y Nov. 28, 2011) ................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir 2002) .................................. 2, 5

*Gibbons v. Malone*, 703 F.3d 595 (2d Cir. 2013) ........................................................ 4

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) .................. 9

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136 (2d Cir. 2011) ........ 4

*Jeanneret v. Vichey*, 693 F.2d 259 (2d Cir. 1982) ....................................................... 6

*Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64 (2d Cir. 2014) ............................... 5

*MAFG Art Fund, LLC v. Gagosian*, 123 A.D.3d 458, N.Y.S.2d 342 (1st Dep't 2014) ......... 6, 10

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ................................. 10

*New York Trans Harbor LLC v. Derecktor Shipyards Conn., LLC*, Index No. 23423/06, 2007 WL 1532293, *6 (Sup. Ct. Kings County, May 29, 2007) .......................... 8

**Statutes**

N.Y. UCC § 2-312 ......................................................................................................... 6

N.Y. UCC § 2-403(1) .................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Defendant Live Art Market, Inc. (incorrectly sued as Live Art Inc.)[1] ("Live Art" or "Defendant") respectfully submits this Memorandum of Law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint of Plaintiff DW Properties ("Plaintiff") (Dkt. 1, Ex. A) (the "Amended Complaint") in this action.[2]

## STATEMENT OF FACTS

The gravamen of the Amended Complaint is that Live Art failed to convey "good title" to an artwork by Cornelius Annor titled *ya tena ase* (the "Work"). Plaintiff specifically claims that Live Art violated the written Terms and Conditions that are an integral part of a Live Art sales invoice dated 2021-November-18 (the "Sale Contract"). While the Amended Complaint does not attach the Sale Contract as an exhibit (it is **Exhibit A** to the accompanying Declaration of Ronald W. Adelman ("Moving Decl."), it refers to it explicitly. *See, e.g.,* Amended Complaint ¶ 1 ("This is an action to recover contractual damages arising from Defendant's breach of express warranty as written in the Terms and Conditions of Sale of Invoice of Cornelius Annor's painting 'ya tena ase'

---

[1] Live Art Market, Inc. is a party to the "Sale Contract" (defined below), and therefore is the correct party defendant. Live Art Market, Inc. is not "also known as Live Art Market Inc." Live Art Market Inc. is, based on the state records of Delaware, a Delaware corporation, but it is not owned or controlled by Live Art Market, Inc.
[2] This case, originally bearing Index No. 155808/2023, was removed from the Supreme Court of the State of New York, New York County to this Court on 2023-August-9 (Dkt. 1) because there is complete diversity between the parties and the amount in controversy, as reflected in the Plaintiff's own Demand for Relief, exceeds $75,000, exclusive of interest and costs. The Defendant was first served with the Summons and Complaint through the undersigned as attorney and agent on 2023-July-11.

1

and tortious damages arising from Defendant's misrepresentation that good title of 'ya tena ase' would pass to Plaintiff upon purchase of the painting.") Because it is an integral part of the Amended Complaint it may be considered in deciding this motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir 2002).

The Sale Contract addresses Live Art's warranty of title in its second bullet point,[3] which states:

- Seller warrants that good title to the Work shall pass upon payment of the Purchase Price and that the Work was created by the artist, but the Work is otherwise sold "as is" *without any representations or warranties of any kind whatsoever, express or implied, including without limitation, representations and warranties as to value, condition, or other matters.* The benefits of the representations and warranties in this Invoice survive the completion of the sale and inure to the benefit of Buyer, but not to subsequent owners or others who may acquire an interest in the Work.

(Emphasis added.)

Plaintiff claims that before it "made the decision to purchase" the Work, its principal told Live Art that "he intended to own and enjoy the painting *for a limited period of time* and then he would like to resale [*sic*] it on the market *at some point.*" Amended Complaint ¶ 19 (emphasis added).

Plaintiff alleges that, less than one year after it purchased the Work, it entered into a "Seller's Auction Agreement" with Phillips to sell the Work. Amended Complaint ¶ 34. After accepting the Work for auction, however, Phillips "exercised its right under

---

[3] The Terms and Conditions are not numbered. Each item therein is divided into a paragraph marked with a bullet point.

the Seller's Auction Agreement to withdraw the [Work] from the auction because Phillips believed that it was subject to a "resale restriction" that allegedly prohibited its resale by public auction from some period of time[4] not alleged by Plaintiff. Amended Complaint ¶¶ 34-35.

Nowhere in the Amended Complaint does Plaintiff does allege that Phillips withdrew the Work from auction because of a defect in Live Art's or Plaintiff's title to the Work, but rather that an "art studio might take legal action, such as an injunction . . . to prevent [the Work] from being included in the [Phillips upcoming] auction sale.]." Amended Complaint ¶ 35.

## SUMMARY OF ARGUMENT

Because Plaintiff (1) confuses a "warranty of title," which Live Art surely gave to Plaintiff, but which has not been breached, with "resale restrictions," and (2) fails to account for the merger clause in the Sale Contract that bar his reliance on the statements he alleges were made by Live Art, the Plaintiff's breach of contract and related claims should be dismissed. The additional claims in the Amended Complaint—for breach of

---

[4] A "resale restriction" has been defined as "a legal clause, sometimes buried in the terms printed on the back of the invoice, which restricts the ability of the buyer to re-sell the work by auction or sometimes imposes a complete ban on any form of resale for a fixed period." Martin Wilson, NON-RESALE CLAUSES IN ART SALES, 2020-November-05 (accessed on https://www.linkedin.com/pulse/non-resale-clauses-art-sales-martin wilson)/ Of note, the author of the article is the Chief General Counsel of Philips; he states in that article, "I am often asked whether I think such non-reselling covenants are generally enforceable under UK law. My answer is that in most cases I do not believe that they are.'

3

warranty, breach of the implied covenant of duty of good faith and fair dealing under New York law (the governing law under the Sales Contract), and negligent misrepresentation—also fail as a matter of law, for the reasons stated below.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While the Court accepts all factual allegations in the complaint as true and draws all ***reasonable*** inferences in the light most favorable to the plaintiff, *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013), it is not required "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself which, by definition, is integral to the complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (in action for breach of contract, noting that "[w]here, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion"). If the relevant contract provisions are unambiguous and plaintiff has no claim under them, then the claim should be dismissed. *See, e.g.*, *Keiler v.*

4

*Harlequin Enterprises Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014) (affirming dismissal of contract claims where relevant contract provision was unambiguous).

That Plaintiff did not attach a copy of the Sale Contract is irrelevant. Its contract-based claims are clearly premised on the Sale Contract, and the Amended Complaint refers unambiguously to it as well. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference" so long as "a plaintiff[ ] reli[ed] on the terms and effect of a document in drafting the complaint.").

I. **LIVE ART COMPLIED WITH ALL WARRANTIES UNDER THE SALE CONTRACT**

The sale of the Work, like all goods, was subject to Article 2 of the Uniform Commercial Code ("UCC"). N.Y. UCC § 2-403(1) provides in relevant part that a "purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." There is no allegation in the Complaint (nor could there be a plausible allegation) that Live Art failed to convey all rights it held in the Work to Plaintiff. Nor is there any allegation that a third party has made a competing claim to title in the Work.

Even if Plaintiff's allegations—based on the hearsay of Phillips auction house—are accepted as true for the purposes of this motion restriction on the Work, it does not rise to the level of a breach of a warranty of good title (which, as noted, was the only

5

relevant warranty Live Art gave).[5] Applying N.Y. UCC § 2-312, the Second Circuit in *Jeanneret v. Vichey*, 693 F.2d 259 (2d Cir. 1982), held that the warranty of good title was not breached by a potential third party claim restricting the purchaser's rights in the art work in question, and that such a breach required a competing "'security interest'" or, "in the normal meaning of language, an 'other lien or encumbrance. . .'" *Id.* at 266. There was no such competing security interest, lien, or encumbrance in that case or in this one.

The essence of the Sale Contract was that Plaintiff was purchasing the Work; it was ***not*** that the Plaintiff was purchasing an investment commodity for purposes of resale at a higher price in the future—much less in the very near future "at some point" as Plaintiff vaguely alleges. (Amended Complaint ¶ 19.) A very similar claim was addressed by the New York's Appellate Division, First Department in *MAFG Art Fund, LLC v. Gagosian*, 123 A.D.3d 458, 998 N.Y.S.2d 342 (1st Dep't 2014). In *MAFG*, the Court held:

> [T]he essence of the MacAndrews Purchase Agreement was that
> MacAndrews was going to buy a sculpture, not that it would later resell it.
> As important as defendants' involvement in the resale was to plaintiffs,
> the parties did not include it in the MacAndrews Purchase Agreement,
> and we will not interpret the agreement as impliedly stating it.

*Id.*, 123 A.D.2d at 460, 998 N.Y.S.2d at 344.

---

[5] There was also a warranty that the Work was created by the attributed artist, but there has been no allegation that that warranty was inaccurate.

There is no warranty in the Sale Contract concerning resale restrictions (if any) and no basis for Plaintiff to believe that there was based on its alleged communications with Live Art. To the contrary, the Sales Contract contains a merger clause (in its eighth bullet point) that explicitly states that it reflects the Plaintiff's entire understanding, and that Plaintiff had the opportunity to include additional terms in the Sale Contract if it wished:

> ***This Invoice contains the entire understanding between Buyer and Seller. It may not be changed except by a writing signed by the parties. Buyer and Seller have had an opportunity to participate in the drafting of this Invoice.*** Neither party may assign their rights or obligations under this Invoice without the prior written consent of the other party. Signatures sent by facsimile transmission and scanned executed Invoices in PDF format sent by email transmission are each valid, binding and deemed an original for all purposes. Each of the parties shall, however, reasonably cooperate with the other in executing further documents or taking further actions as are necessary to fulfill the purposes of this Invoice.

(Emphasis added.)

## II. THE BREACH OF WARRANTY CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM

Plaintiff's claim for breach of contract (the first cause of action in the Amended Complaint) is premised solely on the assertion that Live Art breached a "warranty of good title." The claim for breach of warranty (the second cause of action) is based on the same assertion. The breach of warranty claim is therefore subject to dismissal for the same reasons.

The second cause of action is also subject to dismissal because it merely duplicates the first cause of action, including the identical claim of damages. *See, e.g., New York Trans Harbor LLC v. Derecktor Shipyards Conn., LLC*, Index No. 23423/06, 2007 WL 1532293, *6 (Sup. Ct. Kings County, May 29, 2007) ("Thus, since the allegations of NYWT's third cause of action for breach of warranty consist essentially of a breach of contract claim based on a breach of the express warranties in the Agreement as to the quality of the workmanship and materials, NYWT's second cause of action which alleges this same breach of contract is subsumed in, and duplicative of this claim. Consequently, dismissal of NYWT's second cause of action, on the basis that it is duplicative of its third cause of action, is required."). We respectfully submit that the same result is required here.

### III. THERE IS NO VIABLE INDEPENDENT CLAIM FOR AN ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The claim for an alleged violation of the implied covenant of good faith and fair dealing (the Amended Complaint's third cause of action) duplicates the same subject matter (the alleged failure to disclose that the Work was subject to a resale restriction) and the same damages (refund of the purchase price plus smaller ancillary costs) as the previous causes of action. "Under New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as

redundant." *Ari & Co. v. Regent Int'l Co.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003). Accordingly, this claim must be dismissed on that basis.

## IV. THE NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A VALID BASIS FOR THE EXISTENCE OF A SPECIAL RELATIONSHIP BETWEEN THE PARTIES

The elements of a claim for negligent misrepresentation under New York law "are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted).

Plaintiff here states that the requisite special relationship exists because,

> Due to its sophistication and extensive knowledge in the art industry, Live Art was in a special position of confidence and trust with Mr. Daskal, who has no special knowledge in contemporary art, to render him advice related to those art pieces that Live Art recommended Mr. Daskal to purchase.

(Amended Complaint ¶ 56).

However, the courts sitting in New York (which is of course the principal art market in the United States, if not the world) have rejected the "sophistication and extensive knowledge" of an art dealer as the basis for the requisite special relationship:

9

> Although plaintiffs allege that defendants had superior knowledge about the paintings, courts in this district have stated that "[a]llegations of superior knowledge or expertise in the art field are per se insufficient to establish the existence of a fiduciary relationship." Plaintiffs allege nothing beyond defendants' expertise as a basis for any special relationship and, without more, plaintiffs' allegations are insufficient. Indeed, the alleged purchases appear to have been nothing more than arm's length transactions which did not give rise to a special relationship among the parties. Plaintiffs' negligent representation claim therefore must be dismissed.

*Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK). 2011 WL 5910192, *5 (S.D.N.Y Nov. 28, 2011) (citations omitted). Since the existence of a special relationship is a necessary element of a negligent misrepresentation claim, this cause of action must fail as a matter of law.

It also fails because the Amended Complaint fails to allege an actionable misrepresentation of fact. The prediction, if any, that Plaintiff would be able flip the Work for $120,000 certainly does not qualify. *See, e.g.*, *MAFG*, 123 A.D.2d at 459, 998 N.Y.S.2d at 343 ("As to the claim that defendants misrepresented the value of certain art works, statements about the value of art constitute 'nonactionable opinion that provide[s] no basis for a fraud claim'" (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011)).

In fact, the heart of the Amended Complaint—the existence of an "enforceable" resale restriction on the Work, is based on hearsay and speculation that is more akin to

a game of "Telephone" than an actual chain of events.[6] *See* Amended Complaint ¶ 33 ("Live Art informed Mr. Daskal that someone at Phillips told Jeremy Larner, the owner of the art studio who sold "ya tena ase" to Live Art, that "ya tena ase" was coming up to sale and Mr. Larner was trying to stop this piece from being offered at auction due to the resale restriction."). Such speculation is insufficient to support a negligent misrepresentation claim under the *Twombley/Iqbal* standard of review.

---

[6] For a description of the Telephone game, *see* https://partygames4kids.com/telephone-game-rules-and-funny-phrases (retrieved 2023-July-17).

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully submits that the Complaint should be dismissed in its entirety.

Dated: New York, New York
      2023-August-16

**ARTxLAW PLLC**

By: /s/ John R. Cahill

John R. Cahill
Ronald W. Adelman
8 North Front Street
Kingston, NY 12401
212-719-4400
john@artxlaw.com
ron@artxlaw.com

*Attorneys for*
*Defendant Live Art Inc.*